[Cite as *Wells Fargo Bank, N.A. v. Fortner*, 2014-Ohio-2212.]

## IN THE COURT OF APPEALS OF OHIO
### SECOND APPELLATE DISTRICT
### MONTGOMERY COUNTY

| | | |
|---|---|---|
| WELLS FARGO BANK, N.A. | : | |
| | : | Appellate Case No. 26010 |
| Plaintiff-Appellee | : | |
| | : | Trial Court Case No. 2012-CV-379 |
| v. | : | |
| | : | |
| RUSSELL B. FORTNER, et al. | : | (Civil Appeal from |
| | : | Common Pleas Court) |
| Defendants-Appellants | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 23rd day of May, 2014.

. . . . . . . . . .

SCOTT A. KING, Atty. Reg. #0037582, and JESSICA E. SALISBURY-COPPER, Atty. Reg. #0085038, Thompson Hine LLP, Austin Landing I, 10050 Innovation Drive, Suite 400, Miamisburg, Ohio 45342
      Attorneys for Plaintiff-Appellee, Wells Fargo Bank, N.A.

WORRELL A. REID, Atty. Reg. #0059620, 6718 Loop Road, #2, Dayton, Ohio 45459
      Attorney for Defendant-Appellants, Russell and Cody Fortner

MATHIAS H. HECK, JR., by DOUGLAS TROUT, Atty. Reg. #0072027, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, P.O. Box 972, 301 West Third Street, Dayton, Ohio 45422
      Attorneys for Defendant-Appellee, Montgomery County Treasurer

. . . . . . . . . . . .

FAIN, J.

{¶ 1}     Defendant-appellants Russell and Cody Fortner appeal from an order of the trial court confirming the sale of their home in foreclosure, after having overruled their motion to set aside the sale.  The Fortners first contend that the trial court erred by treating their motion as a Civ.R. 60(B) motion.  They also  contend that the order constitutes an abuse of discretion, and is contrary to law, because the appraisal of the property was not made upon an actual view of the property, and because they were informed by Wells Fargo that the foreclosure would be suspended while their loan modification application was pending. They further contend that the sale should be set aside because they were not given notice thereof.

{¶ 2}     We conclude that the trial court erred by conducting a Civ.R. 60(B) analysis of the Fortners' motion, since there was no final order of confirmation of the sale at the time their motion was filed.  We conclude that because a default judgment of foreclosure had been rendered against them, the Fortners were not entitled to notice of the sale of the property, but we also conclude that the record demonstrates that they were provided with notice.  We further conclude that the appraisal of the property was not improperly performed.   Finally, we conclude that the Fortners' affidavit raises the issue of whether Wells Fargo made representations that it would not proceed with foreclosure while the Fortners' loan-modification application was pending, and whether the Fortners reasonably relied upon that representation to their detriment. The trial court did not address this issue.   Accordingly, the judgment of the trial court confirming the sale is Reversed, and this cause is Remanded for further proceedings.

## I.   The Course of Proceedings

**{¶ 3}** In January 2012, Wells Fargo Bank, National Association, filed suit against the Fortners to obtain a judgment on a note and to foreclose on the mortgage securing the note. Service was properly obtained. The Fortners did not enter an appearance. The trial court entered a default judgment and decree of foreclosure. An order of sale was issued.

**{¶ 4}** A Civil Real Estate Appraisal form was filed valuing the property at $87,000. The form was signed by three individuals. The form included the following statement:

> We, the undersigned, disinterested freeholders, residents of Montgomery County have been sworn by Phil Plummer, Sheriff of Montgomery County, to appraise impartially upon actual view, the [property owned by the Fortners]. We certify that we have each personally inspected this property upon actual view.

**{¶ 5}** The premises were sold. Six days later, before the sale was confirmed, the Fortners filed a motion to set aside the sale. The Fortners argued that Wells Fargo had engaged in misconduct by representing that the property would not be sold while their application for modification of their loan was pending. They further claimed that they were not provided with notice of the sale, and that the appraisal of the property was not made on actual view. In her affidavit in support of the motion, Cody Fortner averred, in pertinent part, as follows:

> * * *

> 2. Prior to July of 2012, Affiant and her husband, Russell B. Fortner, were contacted by the Plaintiff in regards to completing an application for a modification. The sames [sic] was completed and submitted back to the Plaintiff on or about July 1, 2012. See, Exhibit "A" attached.

> * * *

5. In July of 2012, Affiant contacted the Plaintiff, and was told that they did get the application, that the foreclosure action would be put on hold pending the review of the application, **and not to worry**.

6. To the best of Affiant's knowledge, the application for modification is still pending!

7. On August 27th, 2012, the Notice attached hereto as Exhibit "B", informing Affiant and her husband to vacate the premises, was left on Affiant's door.

8. Affiant was not notified of the time and place of the Sheriff's sale, despite the fact that the Plaintiff had been in communication with Affiant and her husband, and knew their desire to remain in the premises.

9. Furthermore, the Civil Real Estate Appraisal filed herein on May 16, 2012, is fraudulent, as the appraisers did not enter her premises commonly known as 355 Hillhaven Dr., West Carrollton, Ohio as they were sworn by law to do.

{¶ 6} The trial court overruled the Fortners' motion to set aside the sale, and later entered an order confirming the sale and distributing the proceeds, from which this appeal is taken. The Fortners' sole assignment of error states:

THE TRIAL COURT'S JOURNAL ENTRY CONFIRMING SALE, ORDERING DEED AND DISTRIBUTING SALE PROCEEDS WAS AN ABUSE OF DISCRETION AND CONTRARY TO LAW, AND RESULTED IN A DENIAL OF APPELLANTS' DUE PROCESS.

{¶ 7} The Fortners raise several issues in this assignment of error. They contend that

the trial court erred by construing their motion to set aside the sale as a motion for relief pursuant to Civ.R. 60(B). They also contend that the sale of their property should be set aside because they did not receive notice of the Sheriff's sale. They further argue that Wells Fargo engaged in "trickery" by misleading them, causing them to believe that the property would not be sold while their loan modification application was pending. Finally, they claim that the sale should be set aside because the appraisal of the property was not made upon actual view of the premises.

{¶ 8}     A trial court's decision whether to confirm or refuse a judicial sale will not be reversed by a reviewing court absent an abuse of discretion. *National Union Fire Ins. Co. v. Hall*, 2d Dist. Montgomery No. 19331, 2003-Ohio-462, ¶ 12.    A trial court abuses its discretion when it makes a decision that is unreasonable, arbitrary, or unconscionable. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983).

## II.   Because the Fortners Moved to Set Aside the Sale Before the Order Confirming it Was Entered, their Motion Was Not a Civ.R. 60(B) Motion for Relief from Judgment

{¶ 9}    The Fortners first argue that the trial court erred by treating their motion to set aside the sale as a motion for relief under Civ.R. 60(B).  We agree.  "A foreclosure action is a two-step process, the first part of which ends with the judgment and decree of foreclosure, which is a final appealable order.  The second part of the process involves the sale of the property, culminating in a confirmation of sale and dispersal of proceeds.  An order confirming the sale of property is also a final appealable order." *Fifth Third Bank v. Dayton Lodge LLC*, 2d Dist. Montgomery No. 24843, 2012-Ohio-3387, ¶ 18.  An order of confirmation can "be challenged

only by way of appeal or through a motion for relief from judgment, pursuant to Civ.R. 60(B)." *Id.* Here, the sale had not yet been confirmed. In the absence of a final appealable order, the Fortners were not required to meet the requirements of Civ.R. 60(B).

### III. In Cody Fortner's Affidavit, the Fortners Raise an Issue Whether Wells Fargo Made a Representation that it Would Not Proceed with the Foreclosure while a Loan Modification Application Was Pending, which the Fortners Reasonably Relied Upon to their Detriment; the Trial Court Should Have Considered this Issue

{¶ 10} The Fortners next argue that Wells Fargo acted fraudulently by representing to them that no action would be taken to sell the residence during the pendency of their loan modification application. As support for this claim, the Fortners cite Cody Fortner's affidavit, in which she avers that they were contacted by Wells Fargo concerning a loan modification some time "prior to July 2012." She further averred that in July 2012 she contacted Wells Fargo and was assured that the foreclosure would be on "hold" pending the decision on the modification application. She attached a document entitled "Homeowner Assistance Form," which the Fortners filled out, with their signatures next to the handwritten date of July 1, 2012.

{¶ 11} In a case discussing whether filing a foreclosure action while engaging the homeowner in loan modification discussions constitutes frivolous conduct, this court, in *Bank of New York Mellon v. Ackerman*, 2d Dist. Montgomery No. 24390, 2012-Ohio-956, ¶ 8, stated:

> That modification discussions were ongoing did not bar the bank from seeking foreclosure. The Ohio Supreme Court said in one foreclosure case that "[the lender]'s decision to enforce the written agreements cannot be considered an

act of bad faith." *Ed Schory & Sons, Inc. v. Soc. Natl. Bank*, 75 Ohio St.3d 433, 443, 662 N.E.2d 1074, 1996-Ohio-194. The Court then quoted the Seventh Circuit Court of Appeals: " 'firms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of "good faith." ' " *Id*., quoting *Kham & Nate's Shoes No. 2, Inc. v. First Bank of Whiting*, 908 F.2d 1351, 1357 (7th Cir.1990). "Indeed," said the Court, "[the lender] had every right to seek judgment on the various obligations owed to it by [the borrower] and to foreclose on its security." Id. In a recent Tenth District foreclosure case, *U.S. Bank Natl. Assn. v. Mobile Assoc. Natl. Network Sys., Inc.*, 195 Ohio App.3d 699, 2011-Ohio-5284, 961 N.E.2d 715, (10th Dist.), before the bank filed a foreclosure action it and the borrowers had agreed in a letter to negotiate about the borrowers' obligations. The borrowers asserted that the letter agreement was a binding contract that modified the loan to require the parties to negotiate. They contended that the bank failed to negotiate, breaching the modified loan. Until the bank negotiated, argued the borrowers, it should be estopped from foreclosing. The Tenth District rejected this argument for several reasons. Pertinent among them, the court said that the bank had the right to initiate foreclosure proceedings. The court found that a provision in the loan documents provided that "the bank was entitled to immediately initiate foreclosure proceedings in the event of default." *U.S. Bank* at ¶ 1. "The bank's decision to pursue its contractual remedies," said the court, "cannot be considered to be an act of bad faith." Id., citing *Ed Schory* at 443, 662 N.E.2d 1074. Also, in a Fifth District foreclosure case,

*Key Bank Natl. Assoc. v. Bolin*, 5th Dist. Stark No.2010 CA 00285, 2011-Ohio-4532, the trial court granted summary judgment for the lender on its foreclosure complaint. The borrower argued that the trial court erred and abused its discretion by doing so because the lender acted in bad faith and misrepresented to the borrower that she could participate in a loan modification program. The appellate court rejected this argument. It found that no provision in the mortgage document "prevent[ed] the lender from insisting on the strict performance of the mortgage obligations." *Key Bank* at ¶ 37. And the court found that no provision required the bank to allow the borrower to participate in loan modification.

**{¶ 12}** The opinion went on to hold that the trial court did not err in rendering summary judgment against the homeowners, because they did not submit competent evidence supporting their claim that "they signed and notarized a loan-modification agreement with the bank and they have been 'willing and able to pay each month' under its terms." *Ackerman* at ¶ 16-17.

**{¶ 13}** Unlike *Ackerman*, the Fortners did submit an affidavit supporting the Home Owners Assistance Form. However, that form does not purport to be a loan modification agreement; rather it purports to be an application for loan modification. Furthermore, the form contains an acknowledgment that it does not constitute a waiver of the bank's right to proceed with foreclosure. Another distinction with *Ackerman* involves the fact that the Fortners' Home Owners Assistance Form was completed four months after the entry of the default judgment and decree of foreclosure, while the Ackermans claimed that they actually entered into a loan modification agreement prior to the entry of the foreclosure judgment.

**{¶ 14}** In the case before us, because a judgment of foreclosure had already been entered,

the parties had not entered into any modification agreement, and there is no claim that the Fortners were making payments under a modification agreement, we would conclude that the pendency of the loan modification application was not a basis for setting aside the sale, but for Cody Fortner's affidavit. In her affidavit, she avers that Wells Fargo made a representation that it would not proceed with the foreclosure action while the loan modification was being discussed. This raises the issue of whether that representation was, in fact, made, and whether the Fortners reasonably relied upon it to their detriment. This issue was not addressed by the trial court.

**IV. Because the Fortners Had Neither Appeared in, Nor Defended, the Foreclosure Action, they Were Not Entitled to Notice of the Sale; Furthermore, the Record Reflects that they Were, in Fact, Served with Notice of the Sale**

{¶ 15} The Fortners also argue that the sale should be set aside because they did not receive notice thereof, and therefore had no opportunity to take steps to protect their interests. While they acknowledge that they neither appeared in, nor defended, the foreclosure action, they argue that their communications with Wells Fargo regarding loan modification constituted an appearance entitling them to notice of the sale.

{¶ 16} "Civ.R. 5(A), * * * provides that, with respect to pleadings and orders subsequent to the complaint, '[s]ervice is not required on parties in default for failure to appear' except with respect to those 'pleadings asserting new or additional claims for relief or for additional damages.' An order for a sheriff's sale is not a new or additional claim for relief nor a request for damages additional to those granted in the underlying judgment. It is merely a process to enforce that judgment as authorized by Civ.R. 69. Therefore, per Civ.R. 5(A), notice of the sheriff's sale need

not be served on a record owner who is in default for failure to appeal." *Ford Consumer Finance Co., Inc. v. Johnson*, 2d Dist. Montgomery No. 20767, 2005-Ohio-4735, ¶ 23; R.C. 2329.26(A)(1)(b). In any event, the record reflects that Wells Fargo did serve the Fortners with notice of the Sheriff's sale   in accord with R.C. 2329.26(A) and Civ.R. 5.

### V.   The Fortners Have Offered No Evidence that the Appraisers'
### Failure to Inspect the Interior of their Home Had a
### Prejudicial Impact Upon the Value Set in the Appraisal

{¶ 17}   R.C. 2329.17, which sets the standard for appraisals in foreclosure proceedings, states in part:

> When execution is levied upon lands and tenements, the officer who makes the levy shall call an inquest of three disinterested freeholders * * * and administer to them an oath impartially to appraise the property so levied upon, upon actual view. They forthwith shall return to such officer, under their hands, an estimate of the real value of the property in money.

{¶ 18}    To rebut the propriety of the appraisal, Cody Fortner filed an affidavit with the motion to set aside the sale, in which she averred that the appraisers did not make an appraisal upon actual view, because they failed to enter the premises and view the interior of the home. The Fortners cite *Glendale Fed. Bank v. Brown*, 2d Dist. Montgomery No 13976, 1994 WL 12475 (Jan. 21, 1994) for the proposition that an appraisal must include entry into the house in order to comply with the actual view requirement of R.C. 2329.17.

{¶ 19} This court has lately clarified *Glendale*, holding that "an appraiser's failure to examine the interior will constitute reversible error only where the interior condition so impacts the value established based on an exterior examination that the complaining party can demonstrate prejudicial effect." *Arch Bay Holdings, LLC v. Brown*, 2d Dist. Montgomery No. 25564, 2013-Ohio-5453, ¶ 13. *See also Fifth Third Mortgage Company v. Wizzard*, 12th Dist. Butler No. CA2013-03-046, 2014-Ohio-73, ¶ 19: "Because the statute contains the phrase 'actual view' rather than any language requiring the appraiser to enter the premises, * * * it is reasonable to put an additional burden on mortgagors to demonstrate prejudice when they deem the appraisal value to be too low."

{¶ 20} The Fortners have offered no evidence that the condition of the interior of the home would have impacted the appraised value to their prejudice. The Fortners make no claim that any improvements have been made to the interior of the home that would cause it to have a higher appraised value. Indeed, they have not contested the value set by the appraisal.

## VI. Conclusion

{¶ 21} We conclude that the trial court erred by using a Civ.R. 60(B) analysis in determining whether the Fortners had demonstrated grounds for setting aside the sale. We further conclude that the trial court erred by failing to address the issue of whether Wells Fargo made a representation to the Fortners upon which they reasonably relied to their detriment. Finally, we conclude that the trial court did not err in rejecting the Fortners' arguments regarding the appraisal of the property and the notice of the sheriff's sale.

{¶ 22} The sole assignment of error is sustained; the order confirming the sale and

distributing the proceeds is Reversed; and this cause is Remanded for further proceedings consistent with this opinion.

. . . . . . . . . . . .

FROELICH, P.J., concurs.

WELBAUM, J., concurring:

**{¶ 23}** I concur with Judge Fain's well-reasoned opinion, but very respectfully write separately to comment on the standard for trial courts in ruling on motions in foreclosure cases.

**{¶ 24}** The majority opinion notes at ¶ 9 that the Fortners' motion to set the sale aside does not challenge a final appealable order, and that Civ.R. 60(B) does not apply because the sale had not yet been confirmed. While this is true, trial courts might be confused about appropriate standards, since foreclosure orders are final appealable orders, and a motion brought to set aside such an order must be brought under Civ.R. 60(B).

**{¶ 25}** Foreclosure actions are unusual in that two sets of proceedings are involved. First, the foreclosure and order of sale is entered, and that is a final appealable order, which is challenged by the filing of a Civ.R. 60(B) motion. *See, e.g.*, *Bank of Am., N.A. v. Bruggeman*, 2d Dist. Montgomery No. 25763, 2014-Ohio-1273, ¶ 15. "An order confirming the sale of the property is also a final appealable order." *Fifth Third Bank v. Dayton Lodge Ltd. Liab. Co.*, 2d Dist. Montgomery No. 24843, 2012-Ohio-3387, ¶ 18, citing *Mid–State Trust IX v. Davis*, 2d Dist. Champaign No. 07-CA-31, 2008-Ohio-1985, ¶ 26. Consequently, a challenge of the confirmation order would be subject to the requirements of Civ.R. 60(B), as well.

**{¶ 26}** In *Countrywide Home Loans Servicing v. Nichpor*, 136 Ohio St.3d 55, 2013-Ohio-2083, 990 N.E.2d 565, the Supreme Court of Ohio stressed the distinct and separate

nature of foreclosure and confirmation proceedings. In *Nichpor*, the bank had received a foreclosure judgment and had sold the property at a sheriff's sale. However, the bank voluntarily dismissed the action without prejudice and then refiled. *Id*. at ¶ 1. On appeal, the Supreme Court of Ohio noted that after the judgment of foreclosure had been entered, "[a]ll that remained in this case were administrative matters finalizing the result of the sheriff's sale and giving the mortgagors the opportunity to exercise their equitable right of redemption. These actions can be classified as proceedings to aid in execution of the judgment." *Id.* at ¶ 6.

{¶ 27}   The Supreme Court of Ohio went on to state that:

Once an order of sale and decree of foreclosure is filed, a creditor may file a praecipe for an order directing the sheriff to sell the property. This second phase of the proceedings is viewed as a separate and distinct action seeking enforcement of an order of sale and decree of foreclosure. The appraisal of the foreclosed property, the sheriff's sale, and the confirmation of that sale have been described as special proceedings to enforce an order of sale and decree of foreclosure. (Citations omitted.) *Id.*

{¶ 28}   The Supreme Court of Ohio, therefore, concluded that after the decree of foreclosure had been filed, the foreclosure action could not be dismissed under Civ.R. 41(A)(1), "because that rule pertains only to the voluntary dismissal of a pending case." *Id.* at ¶ 8.

{¶ 29}   Thus, while a property is being sold, the foreclosure proceeding is no longer pending. A separate and distinct proceeding has begun, the completion of which will result in a final appealable order after confirmation of the sale. The proceeding may be in aid of a previously-obtained judgment, but it is still interlocutory before the sale is confirmed. In this

proceeding, the final appealable order is the order confirming the sale, and a motion to set aside the confirmation order would, therefore, be filed under Civ.R. 60(B). In contrast, a motion submitted before the confirmation order has been filed is interlocutory only, and a party to the action who brings such a motion would not have to meet the requirements of Civ.R. 60(B).

{¶ 30}   With these points in mind, I very respectfully concur.

. . . . . . . . . . . . .


Copies mailed to:

Worrell A. Reid
Scott King
Jessica Salisbury-Copper
Mathias H. Heck, Jr.
Douglas Trout
Hon. Dennis J. Adkins